Filed 5/16/24  P. v. Danaeu CA3

NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| THE PEOPLE, | C098815 |
| Plaintiff and Respondent, | (Super. Ct. No. 21CF05581) |
| v. | |
| CHRISTOPHER RENE DANAEU, | |
| Defendant and Appellant. | |

Following the denial of his request for pretrial mental health diversion, defendant Christopher Rene Danaeu pleaded guilty to assault with a deadly weapon, false imprisonment by violence, making criminal threats, and misdemeanor battery.  He now appeals the denial of his diversion request, arguing the trial court abused its discretion in finding him unsuitable for diversion.  We disagree and affirm the judgment.

1

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant and A.M. were in a dating relationship for two years and broke up in August 2021. On October 26, 2021, A.M. went to their former apartment to retrieve some belongings. When she tried to leave, defendant blocked her path at the front door, pulled out a throwing axe and held it above his shoulder, and said she was "not allowed to leave" until they discussed their relationship. A.M. sat down, and defendant said, "I want you dead" and "I'm ready to commit a murder/suicide right now." Defendant then said his mental health was declining, and he wanted her to understand his suffering. A.M. said she needed to leave, and he eventually threw the axe down, sheathed it, and allowed A.M.to leave the apartment. She had been in the apartment for at least 20 minutes.

A.M. then walked to her car and got in. Defendant approached and tapped on her window while holding an open knife and with another knife clipped to his pocket. A.M. cracked her window and asked him to leave. He threatened to slash her tires and then tried to break her window by striking it with the knife. He swung his knife through the car window and tried to stab A.M.'s hand. A.M. moved away, and defendant unlocked the car door. He then sat behind her in the back seat and pointed his knife at her neck. He eventually got out of the car and allowed her to leave.

The next day, A.M. came back to the apartment to get a few more things. She thought defendant would be at work, but he was at the apartment when she arrived. The two argued, and defendant asked her to come inside. When she entered, defendant locked the door behind her and grabbed the throwing axe. When she tried to use her phone, he tried to take it and then threatened to cut her hands off. She tried to open a window so a neighbor might overhear, but defendant slammed it shut. He took her phone and keys and threw them in the bedroom.

A.M. walked to the bathroom, and defendant followed her and used the hilt of the throwing axe to push her into the bathtub. She fell and hit her head. At one point,

2

defendant went outside, and defendant's mother and brother arrived and began talking to him. His father called, and defendant said he wanted A.M. to suffer as much as he had. Defendant threatened to do enough damage so the police would "kill me on the spot." His mother asked defendant to put the axe down, warning him he could hurt someone, and defendant responded, "That's the goal." He then threatened to kill his mother and brother if either of them tried to stop him from hurting A.M. Defendant's father arrived and disarmed him; A.M. was then able to leave. She had been in the apartment for at least 30 minutes.

A.M. told law enforcement that defendant's behavior during the incidents was uncharacteristic, but there had been prior incidents of unreported domestic violence. Defendant later told a responding police officer who contacted him at work that he did not remember what had happened, and that his parents had told him that they had taken him to a behavioral health treatment center.

Defendant was charged with four counts of criminal threats (Pen. Code, § 422, subd. (a); counts 1, 6, 8, and 9),[1] three counts of false imprisonment by violence (§ 236; counts 2, 5, and 10), two counts of assault with a deadly weapon (§ 245, subd. (a)(1); counts 3 and 4), and one count of misdemeanor battery (§ 243, subd. (c)(1); count 7). With respect to counts 5 and 10, it was further alleged defendant used a deadly and dangerous weapon. (§ 12022, subd. (b)(1).)

In July 2022, defendant requested pretrial mental health diversion pursuant to section 1001.36. A court-appointed mental health expert examined him and recommended diversion. The expert opined defendant's mental health was a contributing factor to the charged offenses, and that he would agree to mental health treatment and respond to treatment. Defendant had a "complex" case, and originally had sought mental

---

[1] Undesignated statutory references are to the Penal Code.

3

health treatment in 2019, at which time he saw a therapist and was diagnosed with bipolar and panic disorders and prescribed medication. Over the course of the next two years, defendant continued to seek treatment. He saw a therapist and was prescribed various medications, including a new medication in September 2021. Less than two weeks before committing the charged crimes, he told his psychiatrist that he was experiencing outbursts and his normal coping mechanisms were not working. Defendant also told the expert he had attempted suicide three times in the prior four years, but suicide was no longer an option, and he was now against any type of self-harm. The expert noted defendant responded well to a mood stabilizer and recommended he re-engage with therapy and medication, engage in case management services, and abstain from using illegal substances.

During the July 2022 hearing, the prosecutor argued defendant was not suitable for diversion because the current offense was "extremely heavy" and took place over two days. The crimes involved use of a weapon, and defendant threatened to kill the victim and then commit suicide. In addition, it was possible defendant had been motivated by jealousy rather than mental illness. Defendant responded that he met the eligibility and suitability criteria under section 1001.36, subdivision (b)(1), as he had been diagnosed with an identified mental health disorder that was a significant factor in the current offenses, and consented to and would respond well to treatment. In addition, defendant argued he would not pose an unreasonable risk of danger to public safety, opining it was unlikely he would commit a new super strike because he had no criminal history and he was actively participating in treatment.

The trial court took the matter under submission and subsequently denied the request via written order. The court identified the Legislature's goals for the mental health diversion program, as stated in section 1001.35. The court also outlined the eligibility criteria as set out in section 1001.36, subdivision (b)(1), but found defendant was not suitable for diversion. Defendant had sought treatment for mental illness for

4

over four years, but it had not been successful, especially since he had committed an "extremely serious" crime while being treated. Under the circumstances, the court found defendant had failed to show he would respond positively to treatment. Citing *People v. Pacheco* (2022) 75 Cal.App.5th 207, the court also found that defendant had failed to show that, if treated in the community, he would not pose an unreasonable risk of committing a "super strike." The court noted that, in making this finding, it had considered the "totality of the circumstances of the charged crime" as well as defendant's limited criminal history and the opinions of the prosecution, defense counsel, and the appointed mental health expert.

The next day, the trial court noted the then-recent case of *People v. Bunas* (2022) 79 Cal.App.5th 840, holding the trial court had discretion to decline to find suitability for diversion based solely on the facts of the current offense. The court invited the parties to address the case and file a motion for reconsideration. The following day, the court issued an amended ruling vacating its finding that defendant was ineligible for diversion. Citing *Bunas*, the court found defendant unsuitable for diversion because he posed an unreasonable risk to public safety and the mental health services he had received had been unsuccessful to date. The court again invited the parties to file a motion for reconsideration.

Later that month, defendant filed a motion to reconsider, asking the trial court to hold an evidentiary hearing to determine his suitability. He argued he was suitable for diversion because the primary purpose of the relevant statute was to protect public safety while also preventing those with mental illness from entering the criminal justice system. His minimal criminal history and mental health history did not reflect a substantial risk that he would commit a new super strike. There was a suitable treatment program for him, and his history of seeking treatment indicated he would complete diversion successfully. He noted his prior providers had changed his medication regularly to find the correct treatment for him.

5

In August 2022, the trial court denied the motion for reconsideration.

In February 2023, defendant pleaded guilty to counts 3, 7, 9, and 10. He also admitted the deadly weapon enhancement associated with count 10. The remaining counts were dismissed with a waiver pursuant to *People v. Harvey* (1979) 25 Cal. 3d 754.

Prior to defendant's sentencing, the probation officer opined defendant was suitable for probation because his crimes were not more serious than other instances of the same crimes given that A.M. was uninjured, defendant had no criminal history, he was only 19 years old at the time of the crime, and the crime was committed because of a mental health condition. The probation report also included supportive letters from multiple friends and family.

In May 2023, the trial court suspended imposition of sentence and placed defendant on a three-year term of probation. Defendant obtained a certificate of probable cause and timely appealed.

## DISCUSSION

Defendant argues the trial court abused its discretion in finding him unsuitable for diversion. Pointing to the expert report, defendant argues the evidence showed he was not a danger to others or himself and would benefit from intervention. He adds that when the court denied diversion, it was improperly focused on the fact that he was receiving mental health treatment at the time of the crimes. He contends he was sober, and his mental health issues could be treated once he received a correct diagnosis. He notes the court ultimately ordered probation because it believed he would be successful with treatment and his mental health issues contributed to his crime.

As we next explain, although reasonable minds may differ as to the propriety of the trial court's decision to deny diversion, we do not see an abuse of discretion here.

When defendant's request for mental health diversion was denied in August 2022, section 1001.36 provided that courts had discretion to grant diversion if (1) the defendant suffered from a mental disorder identified in the Diagnostic and Statistical Manual of

6

Mental Disorders, (2) the mental disorder was a significant factor in the commission of the charged offense, (3) a qualified mental health expert opines that the defendant's symptoms would respond to treatment, (4) the defendant consented to diversion, (5) the defendant agreed to comply with treatment, and (6) the court is "satisfied that the defendant will not pose an unreasonable risk of danger to public safety, as defined in section 1170.18." (§ 1001.36, former subd. (b)(1)(F).) Under section 1170.18, an unreasonable risk of danger to public safety is an unreasonable risk that the petitioner will commit a new "super strike," including, as relevant here, any homicide offense, including attempted homicide, or any serious or violent felony punishable by life imprisonment or death (§§ 1170.18, subd. (c), 667, subd. (e)(2)(C)(iv)). A trial court may not deny diversion to an otherwise eligible defendant unless it also finds the defendant is likely to commit one of these offenses. (*People v. Moine* (2021) 62 Cal.App.5th 440, 450.)

In considering this risk, a trial court may consider (1) the opinions of the prosecutor, defense counsel, or a qualified mental health expert, (2) the defendant's history of violence or criminal acts, (4) the current charged offense, and (5) "any other factors that the court deems appropriate." (§ 1001.36, former subd. (b)(1)(F).)[2]

We review for abuse of discretion a trial court's denial of a defendant's request for diversion, and factual findings are reviewed for substantial evidence. (*People v. Whitmill* (2022) 86 Cal.App.5th 1138, 1147.) Here, because substantial evidence supports the trial court's finding that defendant was unsuitable for diversion because he posed an unreasonable risk to public safety, we need not address defendant's arguments regarding the propriety of the court's other considerations.

Although defendant had no criminal history, his current offenses were serious and dangerous, as we have described in detail *ante*. He twice held A.M. against her will for

---

[2] The current version of section 1001.36 permits the court to consider the same factors. (§ 1001.36, subd. (c)(4).)

7

substantial periods of time and assaulted her multiple times with an axe as well as a knife. He threatened her with extreme violence, and also threatened family members. He voiced the intent to act in a manner that would prompt the police to kill him. He had attempted suicide three times in the past four years; although he denied any remaining desire for self-harm, the trial court was entitled to treat that claim with skepticism. The expert report did not opine on whether defendant was dangerous or likely to reoffend. Under the circumstances, it was neither arbitrary nor capricious for the court to conclude that there was an unreasonable risk that defendant would commit homicide or attempted homicide.

Defendant argues the trial court necessarily improperly evaluated defendant's level of risk to the community when it denied diversion in August 2022, because the court ultimately suspended imposition of sentence and placed him on probation during the May 2023 sentencing hearing. We disagree that the latter decision informs the propriety of the former. In denying diversion, the trial court made clear it had considered the permissible factors, including defendant's limited criminal history, and the opinions of the prosecution, defense counsel, and the appointed mental health expert. (See § 1001.36, former subd. (b)(1)(F) [permitting the trial court to consider such evidence when determining whether a defendant poses an unreasonable risk to public safety].) The court also correctly identified the Legislature's goals for the mental health diversion program as stated in section 1001.35, indicating it considered them in finding defendant unsuitable for diversion. This consideration of the primary purposes of the mental health diversion statute (as opposed to reliance on general sentencing objectives) distinguishes this case from *People v. Whitmill, supra,* 86 Cal.App.5th at page 1156, on which defendant relies. There, the trial court did not consider section 1001.35 at all. Further, the facts of this case distinguish it from *Whitmill*, where the defendant's "compliant non-violent behavior after negligently firing one shot into the air mitigates any inference that appellant is likely to commit a super strike offense in the future." (*Whitmill*, at p.

8

1154.)  Defendant's offenses before the trial court here were far more concerning. Simply put, the court made the relevant considerations at the appropriate time when determining suitability in August of 2022.

By the time the trial court ordered probation in May 2023, it had the benefit of nine months of additional information about the risk defendant posed to public safety, including defendant's behavior in jail.  In addition, the probation officer recommended that defendant was suitable for probation, and the report included supportive letters from multiple friends and family.  Under the circumstances, it was not an abuse of discretion for the court to deny defendant pretrial diversion in August 2022.

**DISPOSITION**

The judgment is affirmed.

_____/s/_____<br>Duarte, Acting P. J.

We concur:

_____/s/_____
Mesiwala, J.

_____/s/_____
Wiseman, J.*

---

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.